# IfIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NISSAN MOTOR ACCEPTANCE CORP.** | : | CIVIL ACTION |
| **v.** | : | NO. 18-5451 |
| **SPORTS CAR LEASING LLC** | : | |

## MEMORANDUM

**SCHMEHL, J.**   /s/ JLS                                                                 June  22, 2021

Plaintiff Nissan Motor Acceptance Corporation ("Nissan" or "NMAC") brought this action to enforce its perfected security interest in certain vehicles purchased by Defendant Sports Car Leasing LLC ("Sports Car Leasing") from three Nissan dealerships (the "Dealerships") in New Jersey and, for such vehicles Sports Car Leasing has already sold, its security interest in the proceeds of such sales.

On December 18, 2018, Nissan filed a motion for a temporary restraining order and/or preliminary injunction seeking to enjoin Sports Car Leasing from, *inter alia*, selling 63 motor vehicles (the "Vehicles") that Sports Car Leasing had purchased from the Dealerships. On December 19, 2018, the Court granted Nissan's motion for injunctive relief and enjoined Sports Car Leasing from selling, auctioning, leasing, or otherwise disposing of any of the Vehicles and further enjoined Sports Car Leasing from allowing the Vehicles to become subject to any security interest or used in a manner inconsistent with Nissan's claimed interest in the Vehicles. After Sports Car Leasing filed a motion to dissolve the injunction on January 24, 2019, the Court issued an Order on March 5, 2019, requiring Nissan to post an injunction bond in the amount of

1

$250,000 as security for the issuance of the December 19, 2018 Injunction. Nissan subsequently posted the bond on March 11, 2019.

On August 23, 2019, Nissan filed a motion to compel the Sale of the Vehicles and to Deposit the Proceeds of the Sale into the Court. On September 19, 2019, the Court granted the motion and ordered that Sports Car Leasing sell the remainder of the Vehicles subject to the Injunction but which had not previously been sold or disposed of by Sports Car Leasing and directed Sports Car Leasing to deposit the net amount realized from any sales into the registry of the Court. On November 5, 2019, Sports Car Leasing deposited $357,500 into the Court's registry.

After the parties completed discovery, Nissan filed a motion for summary judgment. In a Memorandum Opinion and Order dated March 29, 2021, the Court denied Nissan's motion for summary judgment. Because the Court agreed with Nissan that there were no material facts in dispute, the Court also invited Sports Car Leasing to file its own motion for summary judgment. On April 1, 2021, Sports Car Leasing filed its motion for summary judgment, seeking judgment on all of Nissan's claims contained in its Amended Complaint. On April 2, 2021, the Court granted Sports Car Leasing's motion and entered judgment in favor of Sports Car Leasing and against Nissan on Nissan's Amended Complaint.

On April 13, 2021, Sports Car Leasing filed a motion for withdrawal of the escrowed funds in the amount of $357,500. On that same day, Sports Car Leasing filed a motion for judgment on the bond posed by Nissan in the amount of $250,000. On April 30, 2021, Nissan filed a Notice of Appeal from the Court's Order granting judgment on favor of Sports Car Leasing and against Nissan. On that same day, Nissan filed a

motion for a stay of proceedings pending appeal. For the reasons that follow, that motion is granted.

In determining whether to grant a stay pending appeal, a court must consider the following factors:

> (1) whether the appellant has made a strong showing of the likelihood of success on the merits;
>
> (2) whether the appellant will suffer irreparable injury absent a stay;
>
> (3) would a stay substantially harm other parties with an interest in the litigation; and
>
> (4) whether a stay is in the public interest.

*In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).

In *Revel*, our Court of Appeals instructed that these factors should be analyzed as follows:

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach. ... [D]epending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.

*Id*. at 571 (quotation marks omitted).

The Court of Appeals further explained that the necessary level or degree of likelihood of success varies according to the court's assessment of the other stay factors. The more likely the appellant is to prevail on appeal, the less the movant must

3

demonstrate that the balance of harms weigh in its favor; the less likely movant is to prevail on appeal, the more the balance of harms must weigh in its favor. *Id*. at

Considering the first factor, the Court notes that Nissan contends that it is reasonably probable that it will succeed on the merits of its appeal because the Court "has misapplied Federal Rule of Civil Procedure 56, misinterpreted the relevant provisions of Pennsylvania's Uniform Commercial Code and ignored both binding Pennsylvania case law and material evidence of record." ECF 99, p.2. Nissan does not state any specific misapplications or misinterpretations by the Court.

The Court agrees with Sports Car Leasing that Nissan's contention is quite vague and lacking in specifics. Nevertheless, the Court notes that resolution of Nissan's summary judgment motion involved careful consideration by the Court of a number interconnecting steps, especially involving application of the Pennsylvania Uniform Commercial Code. These included whether Sports Car Leasing was a buyer in the ordinary course of business, acted in good faith and had subjective as opposed to objective knowledge that its purchase of the Vehicles in question violated Nissan's security interest in those Vehicles. If the Court of Appeals were to disagree with the Court's analysis at any one of these steps, the Court of Appeals may reach a different conclusion on Nissan's motion for summary judgment. Therefore, while the Court believes that its analysis of the issues was correct, and more likely than not, will be affirmed on appeal, the Court believes that given the complexity of the issues in this case, the Court finds that Nissan has a greater than negligible likelihood of success on appeal, even though it is less than 50%. *Revel,* 802 F.3d at 568 & 571.

With regard to the second factor, irreparable harm, Nissan contends that if the Court releases the funds held in escrow, "the funds will likely be dissipated quickly by Sports Car and never recoverable again." ECF 99 p.2. Sports Car Leasing correctly points out that in general, damages in the form of loss of money is not considered to be irreparable harm. *See, e.g.*, *Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011),* as amended (Mar. 7, 2012) (generally, a purely economic injury, compensable in money, does not satisfy the irreparable injury requirement, although an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business); *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("Economic loss does not constitute irreparable harm").

However, where, as here, funds in dispute have been escrowed, courts have held that distribution of the escrow may constitute irreparable harm. See *In re Flight Transp.. Corp. Sec. Litig*, 730 F.2d 1128, 1133–34 (8th Cir. 1984); *Devon IT, Inc. v. IBM Corp.*, 2013 WL 6721748, at *8 (E.D. Pa. Dec. 20, 2013) (distribution of escrowed funds pending outcome of appeal constitutes irreparable harm). The reason for this is that these funds have now been collected, are located in one place and can easily be distributed if necessary.

The Founder and a controlling member of Sports Car Leasing, Ralph Pindek ("Pindek"), is 63 years old. If the funds were released to Sports Car Leasing before Nissan's appeal was resolved, Pindek could decide to retire and liquidate Sports Car Leasing as a viable entity. And while the Court does not have any indication that such an action is imminent or that Sports Car Leasing has dissipated any funds in the past, the Court cannot ignore what might appear to be an irresistible temptation. In addition,

5

the Court has no information on the financial status of Sports Car Leasing and cannot predict whether a year from now it would have sufficient funds to satisfy any potential judgment in favor of Nissan if the funds were released now. Therefore, the wise move is to preserve the status quo and therefore the Court finds that the second factor also weighs in favor of Nissan.

    Having found that the first two factors weigh in favor of Nissan, the Court considers the third and fourth factors. Other than the fact that it was successful on summary judgment and is entitled to the funds in escrow, Sports Car Leasing has not made any showing of an immediate need for the these funds and considering that releasing the funds may make it impossible for Nissan to collect a judgment if it is successful on appeal, the Court finds that the third factor also weighs in favor of Nissan.

    Finally, with respect to the fourth factor, whether a stay is in the public interest, the Court notes that this factor is not relevant since this case involves a private party dispute.